Abe Wender v. Commissioner.
Wender v. Commissioner
Docket No. 51519.[1]
United States Tax Court
T.C. Memo 1956-81; 1956 Tax Ct. Memo LEXIS 213; 15 T.C.M. (CCH) 416; T.C.M. (RIA) 56081; April 10, 1956
*213 Petitioner is one of three liquor licensees who were authorized to operate a retail liquor store in Clinton, Tennessee, in 1949. During the year in question petitioner operated his store on premises leased from his mother at a rental of 5 per cent of gross sales with a minimum guarantee of $200 per month. The actual rental calculated on the percentage basis exceeded $17,000 in 1949. Prior to the lease here in issue, the property was rented for $125 a month. Respondent disallowed the deduction of payments under such lease in excess of $3,600 per year. Held, that petitioner failed to prove that payments made by him under the lease in excess of $3,600 per year were required to be made as a condition to continued use of the premises within the meaning of section 23(a)(1)(A) of the I.R.C. of 1939. Clyde W. Key, Esq., Bank of Knoxville Building, Knoxville, Tenn., for the petitioner. Herman Wolff, Jr., Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income taxes for the year 1949 in the amount of $8,315.70. The question presented is whether payments made by petitioner in excess of $3,600 under *214 a lease arrangement with his mother were deductible as rent under section 23(a)(1)(A) of the Internal Revenue Code of 1939. Findings of Fact The facts are partly stipulated and to the extent so stipulated are incorporated herein by reference. Petitioner resides in Clinton, Tennessee, and timely filed his 1949 income tax return on an accrual basis with the then collector of internal revenue for the District of Tennessee. Petitioner owned and operated a retail liquor store in Clinton during the taxable year 1949. The retail sale of liquor in Tennessee is regulated under a so-called "County Local Option Plan." Under this plan every county in the state is privileged to hold a referendum election every two years to determine whether retail liquor stores should be permitted to operate in the county. If the vote favors establishment and operation of retail liquor stores, such is thereafter permitted for the following two years within the corporate limits of each incorporated city located within the county and having a population of more than 1,000 persons. The legislative body of each such city is empowered to restrict the number and location of the stores. On November 4, 1947, a *215 liquor referendum election was held in Anderson County, Tennessee. The result of the referendum was to permit the operation of retail liquor stores in Anderson County after January 1, 1948. Five previous liquor referendum elections held in Anderson County between 1933 and November 1947 had failed to make legal the operation of such stores. In December 1947, the city of Clinton, by ordinance, (in effect during 1949) limited the number of retail liquor stores for Clinton to three, and required that all three be located within three city blocks situated approximately in the center of the retail business district. Petitioner had never engaged in the liquor business prior to 1948. He was, however, selected as one of the three persons to be granted a retail liquor license, provided only that he agree to remain neutral in certain litigation that had been commenced by the "Dry's" to contest the results of the November 4, 1947, referendum. In petitioner's effort to locate a building within the permissible zone suitable to the operation of a retail liquor store, he contacted a few people that he knew in order to ascertain whether or not any such premises were available. His mother owned *216 one such building at the time and petitioner felt that he could eventually lease such building if he could not locate any other suitable property. The building was then occupied by a billiard parlor and was being rented at $125 per month. Petitioner found that one property which he might have obtained had already been leased to Maynard Sample, one of the three licensees. Petitioner did not look any further and finally entered into an agreement with his mother, through his sister, who handled the rental of the mother's property in Clinton, the mother then living in New York. Petitioner leased the property on the following terms, by agreement entered into on January 15, 1948. "It is contracted and agreed by and between the parties hereto that the amount of said rental, payable to the Lessor, shall be a sum equal to five per cent (5%) of the total gross retail sales of a retail liquor store business to be conducted on said premises, but in no event shall the minimum rental payable hereunder be less than Two Hundred Dollars ($200.00) per month. Said minimum monthly rental of Two Hundred Dollars ($200.00) per month shall be due and payable on or before the 10th day of the following calendar *217 month. Any balance remaining due on said rent after the payment of said Two Hundred Dollars ($200.00) per month shall be paid at the end of the calender [calender] year or as soon thereafter as is practicable for the computation of the exact balance owed." Petitioner paid $17,933.41 in 1949 as rent under the aforementioned lease agreement. Herbert Davis, petitioner in a similar proceeding, leased the premises which he occupied from his father on precisely the same terms as petitioner in this proceeding leased the premises which he occupied. The payments made by Davis to his parents under the percentage arrangement exceeded $20,000 for each of the years 1948, 1949 and 1950. The property had previously been rented for $140 a month. Davis had negotiated with one L. B. Parker for the use of Parker's building on the basis of a percentage from 6 per cent to 8 per cent of gross sales with an option to purchase the building at a price ranging between $35,000 to $37,000, but a final agreement was never entered into. Davis learned of the availability of another suitable building and persuaded his father to purchase it for $9,800. His father leased it to him for the operation of his retail *218 liquor store on the terms above described. Maynard Sample, the third licensee, searched for a location for his business for approximately two weeks, and during that time undertook negotiations with some five or six people, in the course of which one owner offered to lease his property at a percentage of 6 per cent of gross receipts. Sample did not accept these terms and he opened his first retail liquor store in a building for which he paid a rental of $125 per month with no percentage arrangement. He occupied the building for approximately 18 or 20 months, after which time he advanced the sum of $10,000 for the construction of a new building and received in exchange therefor credit for 26 months' rent at $385 per month. The new building was a little larger than the building occupied by petitioner, and a little smaller than the building occupied by Davis. Troy Dykes operated a retail liquor store in the city of Norris, located in Anderson County about six miles from Clinton, in 1950. The premises which he occupied were leased from the Norris Land Company, which at that time controlled all of the properties suitable for the conduct of such business in Norris. The rental paid by *219 Dykes was 9 per cent of the gross income with a guaranteed minimum rental of $300 per month. Percentage leases were in common and general use for numerous types of business during the years 1948, 1949 and 1950. Leases for retail liquor stores were reported by real estate operators in some areas with provisions requiring payments by the tenant of amounts ranging from 6 per cent to 8 per cent of gross sales. Opinion FISHER, Judge: The only question before us is whether the rental payments made by petitioner in 1949, under the lease arrangement with his mother, in excess of $3,600 per year, were excessive and not required to be made as a condition to the continued use or possession of the property under section 23(a)(1)(A), as determined by respondent. The issue is identical in principle with that presented by the first issue in the case of Herbert and Georgia Davis, 26 T.C. , No. 4 (filed simultaneously herewith). We sustain the respondent in the instant case on the basis of our analysis and reasoning in Herbert and Georgia Davis, supra. Decision will be entered for the respondent. Footnotes
1. The issue here presented is quite similar to the first issue involved in Herbert Davis v. Commissioner, Docket No. 51509, in which case Findings of Fact and Opinion have been filed this day. The proceedings in the two cases have not been consolidated. It has been stipulated, however, that there shall be incorporated as evidence into the record in each case so far as relevant thereto all of the evidence introduced in the other proceeding.↩